...OC-NDTX-DA
'25 MAR 19 AM 11:12

KM

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Rachel Tennyson | ) |
| | ) |
| Plaintiff | ) **3-25 C V 0 6 6 1 - K** |
| | ) Case Number_____ |
| vs | ) |
| | ) |
| LoanCare LLC | ) |
| | ) |
| Defendant | ) |

---

## <u>VERIFIED COMPLAINT</u>

Rachel Tennyson
806 Martin Luther King Jr. Blvd
Waxahachie, TX 75165
(469) 778-8322
Ravenblack036@gmail.com

1

## TABLE OF CONTENTS

I. Parties...................................................................................................................3

II. Jurisdiction and Venue...................................................................................4

III. Introduction....................................................................................................4

IV. Factual Allegations........................................................................................5

V. Causes of Action............................................................................................8

Count One – Breach of Contract......................................................................8

Count Two FDCPA............................................................................................9

Count Three Negligence.................................................................................11

Count Four Fraudulent Inducement...............................................................13

VI. Conclusion..................................................................................................15

VII. Prayer for Relief.........................................................................................16

**IN THE  DISTRICT COURT OF THE UNITED STATES
FOR THE  NORTHERN DISTRICT OF TEXAS**

Rachel Tennyson                    )
                                   )
    Plaintiff                      )
                                   )    Case Number_____
                                   )
vs                                 )
                                   )
LoanCare LLC                       )
                                   )
    Defendant                      )
                                   )

## VERIFIED COMPLAINT

**COMES NOW**  the Plaintiff, Rachel Tennyson, appearing pro se, and hereby files this Verified Complaint against Defendant LoanCare, LLC. In support of this Complaint, Plaintiff alleges as follows:

## I. PARTIES

1. **Plaintiff**, Rachel Tennyson, is a citizen of the State of Texas, residing at 806 Martin Luther King Jr. Boulevard, Ellis County, Texas 75165.

2. **Defendant**, LoanCare, LLC, is a limited liability company that serves as a mortgage loan servicer and debt collector. It is organized under the laws of the State of Virginia and has its principal place of business at 3637 Sentara Way, Virginia Beach, VA 23452. Defendant is a citizen of Virginia. The registered agent for service of process is CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

3

## II. JURISDICTION AND VENUE

3. The transactions and events which form the basis of this Complaint occurred within Ellis County, Texas.

4. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the Plaintiff and Defendant. The Plaintiff's claims involve her property, valued at approximately $255,519.00, and Plaintiff seeks monetary relief in excess of $75,000.00.

5. Venue is proper in this District under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in this District.

6. The Legal Description: THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COIJNTY OF ELLIS, STATE OF TEXAS: LOT !2, FAIRVIEW ADDITION, CITY OF WAXAHACHIE, ELLIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLI,]ME 193, PAGE 379, MAP AND PLAT RECORDS OF ELLIS COUNTY, TEXAS.

## III. INTRODUCTION

7. Plaintiff, Rachel Tennyson, appearing pro se, hereby files this Verified Complaint against Defendant, LoanCare, LLC, alleging violations of the loan modification agreement, breach of contract, and other wrongful actions taken by the Defendant in connection with Plaintiff's mortgage loan. The Defendant, LoanCare, LLC, has acted in a manner that has caused significant financial hardship to the Plaintiff, including sending contradictory information, misrepresenting the status of the loan, and failing to adhere to the terms and conditions of the loan modification agreement. Despite

assurances made by Defendant, Plaintiff's monthly payments have increased, the principal balance is inconsistent with loan modification terms, and the Defendant has failed to properly account for payments and balances. Plaintiff seeks relief for the damages caused by these actions and requests that the Court correct these discrepancies and grant any further relief it deems just and proper.

## IV. FACTUAL ALLEGATIONS

8. The averments of paragraphs 1 through 7 are re-alleged and incorporated herein by reference.

9. On April 29, 2021, Plaintiff purchased the property located at 806 Martin Luther King Jr. Boulevard, Ellis County, Texas 75165 using Gateway Mortgage.

10. The loan obtained by Plaintiff was in the amount of $211,105.00, a FHA loan with a fixed interest rate of 3.625% and a term of 30 years. A copy of the promissory note and deed of trust is attached hereto as **Exhibit A.**

11. The monthly payment amount was $962.75 for principal and interest.

12. On 5/15/2021 Plaintiff received a letter from Gateway Mortgage telling her that her loan was sold/transferred to Lakeview Loan Servicing, LoanCare LLC. A copy of this letter is attached hereto as **Exhibit B.**

13. Plaintiff was struggling with making payments and inquired about getting a loan modification.

14. On February 23, 2023 Plaintiff signed a loan modification and partial claim deed of trust.

15. The partial claim deed of trust was for $45,160.86.

16. The $45,160.86 was removed from the principal balance of $211,105.00 which reduced the principal balance to $164.898.64.

17. Plaintiff believing that the reduction in the principal balance that payments would be less each month and more affordable. A copy of the loan modification and partial claim deed of trust is attached hereto as **Exhibit C.**

18. The terms and conditions of the loan modification did not result in the expected decrease in monthly payments.

19. Despite the reduction of the loan principal from $211,105.00 to $164,898.64 and an extension of the loan term from 30 years to 40 years, Plaintiff's monthly payment increased from $962.75 to $980.13.

20. This increase in payment is contrary to the expectations set by the loan modification and caused significant financial hardship to Plaintiff.

### LoanCare's Contradicting Statements

21. Defendant has harmed Plaintiff by sending contradicting information.

22. On May 15, 2024 a lien release was recorded in the county recorder of deeds showing that $10,555.00 has been satisfied. A copy of this is attached hereto as **Exhibit D.**

23. On or around March 1, 2024 Plaintiff logged into Defendant's online portal and the main page showed that the total amount due was $19,425.76. A copy of this is attached hereto as **Exhibit E.**

24. Plaintiff received a monthly statement for the month of April 2024 that shows that the total amount due was $4,552.85. A copy of this statement is attached hereto as **Exhibit F.**

25. Exhibit E also shows that the payment due for 11/1/2023 was paid on 12/4/2023, payment due for 12/1/2023 was paid on 12/19/2023, payment due for 1/1/2024 was paid on 1/11/2024, and payment due for 2/1/2024 was paid on 3/1/2024.

26. Plaintiff received a payment history for the year of 2023. It shows that the principal balance was $260,580.64 on March 17, 2023. A copy of this payment history is attached hereto as **Exhibit G.**

27. Exhibit F shows that after applying the $45,160.86 the principal balance was $215,419.78. This contradicts the loan modification terms and conditions which state that the principal balance is $164,898.64. (See Exhibit C).

28. On 4/23/2024 Plaintiff received a payoff statement from Defendant that showed the payoff amount was $177,254.67. A copy of this payoff statement is hereto attached as **Exhibit H.**

29. If you compare the payoff statement (Exhibit G) with the monthly statement for April 2024 (Exhibit E) you will see that there is a $13,238.50 difference in both of the principal balances.

30. On 6/18/2024 Plaintiff received a letter in the mail from Defendant that stated her loan with them was paid in full. This letter stated specifically :

"Dear Rachel; Tennyson: The terms of your mortgage loan have been fully satisfied and the enclosed document has been recorded in the official land records office where your property is located. You do not need to take any further action regarding this matter, but please retain this important document for your records. It has been a pleasure to service your mortgage loan."

31. A copy of this letter is attached hereto as **Exhibit I.**

32. The statement dated June 17, 2024 for payment due July 1, 2024 does not show any sign of the loan being paid in full. A copy of this statement is attached hereto as

**Exhibit J.**

# V.  CAUSES OF ACTION
## COUNT ONE
## BREACH OF CONTRACT

33. The averments of paragraphs 1 through 32 are re-alleged and incorporated herein by reference.

34. On February 23, 2023, Plaintiff and Defendant entered into a loan modification agreement, which reduced the principal balance of Plaintiff's loan from $211,105.00 to $164,898.64 and extended the term of the loan from 30 years to 40 years.

35. The agreement, however, did not reduce Plaintiff's monthly mortgage payment, as was expected, but instead increased the principal and interest from $962.75 to $980.13.

36. The modification agreement was entered into with the mutual understanding that the Plaintiff's monthly payments would decrease as a result of the modification. However, Defendant's actions in increasing Plaintiff's monthly payment despite the reduction in principal constitute a breach of the modification agreement.

37. Additionally, Defendant failed to disclose material terms of the loan modification, including the increase in the interest rate from 3.625% to 6.625%, which caused the unexpected increase in the monthly payments.

38. Defendant's failure to disclose these material terms further constitutes a breach of the duty of good faith and fair dealing implied in the loan modification agreement.

39. As a result of Defendant's breach, Plaintiff has suffered financial hardship due to the increased monthly payments, which were contrary to the expectations created by the loan modification agreement.

40. Plaintiff seeks:

(1) A Declaratory Judgment that Defendant breached the contract, and declare it null and void.

(2) An injunction preventing the Defendant from foreclosing on the Plaintiff.

(3) Punitive damages due to the Defendant's egregious and bad faith conduct.

(4) Compensatory damages for all losses incurred due to the fraud including legal fees and damages for emotional distress.

# V. CAUSES OF ACTION
## COUNT TWO
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

41. The averments of paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

42. LoanCare, LLC, is a "debt collector" as defined by the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692a(6), because it regularly collects or attempts to collect debts owed by consumers.

43. Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3), as she is a natural person obligated or allegedly obligated to pay a debt.

44. Defendant's actions have violated multiple provisions of the FDCPA, including but not limited to the following:

### 15 U.S.C. § 1692e (False or Misleading Representations)

45. Defendant made false representations about the status of the Plaintiff's loan and the

9

amount due, as evidenced by contradictory statements in the loan records (e.g., Exhibit E, Exhibit F, and Exhibit H). Defendant represented that certain amounts were satisfied or paid off when they had not been, leading to confusion and distress for the Plaintiff.

## 15 U.S.C. § 1692f (Unfair Practices)

46. Defendant used unfair practices in its attempts to collect on the loan by sending misleading and conflicting communications about the outstanding balance and amounts due (as shown in Exhibits D, E, F, and H). Defendant failed to provide clear, accurate, and consistent statements about the balance and made it difficult for Plaintiff to determine what was owed and whether her payments had been properly applied.

## 15 U.S.C. § 1692g (Validation of Debts)

47. Defendant failed to adequately validate or verify the debt, and when discrepancies were pointed out by the Plaintiff, Defendant failed to correct the records or provide accurate and clear information, as required under the FDCPA.

## 15 U.S.C. § 1692e(10) (Threats and Deceptive Means)

48. Defendant used deceptive means to collect or attempt to collect the debt by sending statements with varying balances due and making contradictory statements regarding the status of the loan, causing confusion and distress for Plaintiff.

49. Defendant's actions in violating these provisions of the FDCPA were done willfully and knowingly.

50. As a direct result of Defendant's violations of the FDCPA, Plaintiff has suffered actual damages, including but not limited to financial losses, emotional distress, and the costs of having to dispute Defendant's false claims and seek resolution of the discrepancies.

51. Plaintiff seeks:

(1) A Declaratory Judgment that Defendant violated the FDCPA, 15 U.S.C. §1692(e), §1692(f), §1692(g),

(2) An injunction preventing the Defendant from foreclosing on the Plaintiff.

(3) Plaintiff is entitled to statutory damages under 15 U.S.C. § 1692k, as well as actual damages, including but not limited to the financial and emotional harm caused by Defendant's unlawful actions. Plaintiff also seeks attorney's fees and costs incurred in this action.

## V.  CAUSES OF ACTION
## COUNT THREE
## NEGLIGENCE

52. The averments of paragraphs 1 through 51 are re-alleged and incorporated herein by reference.

53. LoanCare, LLC, as the mortgage loan servicer, owed a duty of care to Plaintiff to manage, account for, and report Plaintiff's mortgage loan and related financial transactions accurately and in good faith. This duty includes ensuring that statements made to the Plaintiff about the loan balance, payments, and any loan modifications are accurate and not misleading.

54. Defendant, LoanCare, LLC, was negligent in its duty of care towards Plaintiff.

55. Defendant failed to provide accurate and consistent statements regarding the amount owed on Plaintiff's loan, as shown in Exhibits E, F, G, and H, where Defendant made contradictory statements about the loan balance.

56. Defendant failed to properly apply payments to Plaintiff's account and inaccurately

11

reporting the principal balance after loan modification (Exhibit F).

57. Defendant mislead Plaintiff about the status of her loan, including contradictory information in communications regarding whether the loan had been paid off in full (Exhibit I).

58. Defendant failed to properly address and resolve discrepancies in the loan balance after Plaintiff raised concerns, leaving Plaintiff to rely on inaccurate and conflicting statements.

59. As a direct and proximate result of Defendant's negligent actions, Plaintiff has suffered harm, including but not limited to:

- Financial harm due to incorrect loan balances, overstatements of amounts due, and an increase in monthly payments despite a loan modification.

- Emotional distress caused by the confusion and uncertainty regarding the status of the loan and Defendant's failure to correct its records.

- Time and effort expended by Plaintiff in attempting to address the inaccuracies and resolve the issue.

60. Defendant's conduct was a direct and proximate cause of Plaintiff's damages, and Plaintiff is entitled to recover damages for these losses as a result of Defendant's negligence.

61. Plaintiff seeks

(1) Actual damages for the harm caused by Defendant's negligence, including but not limited to financial losses, emotional distress, and any other losses directly caused by Defendant's failure to properly manage the loan.

# V.  CAUSES OF ACTION
## COUNT FOUR
## FRAUDULENT INDUCEMENT

62. The averments of paragraphs 1 through 72 are re-alleged and incorporated herein by reference.

63. Defendant, LoanCare, LLC, violated Section § 27.01 of the Texas Business and Commerce Code,[1] intentionally made false representations and omissions to Plaintiff, Rachel Tennyson, with the intent to deceive Plaintiff into entering into a loan modification agreement on or around February 23, 2023.

64. Specifically, Defendant fraudulently induced Plaintiff into modifying her loan by making the following false representations:

65. Defendant misrepresented that the loan modification would result in a decrease in Plaintiff's monthly mortgage payment, despite the fact that the modification increased Plaintiff's monthly payment from $962.75 to $980.13 (Exhibit C).

66. Defendant failed to disclose material information about the terms of the modification, including but not limited to an increase in the interest rate from 3.625% to 6.625%, which contributed to the increase in Plaintiff's monthly payment.

67. Defendant falsely represented that the modification would ease Plaintiff's financial burden when, in fact, the opposite occurred.

68. Defendant made these false representations with the intent to induce Plaintiff to agree to the loan modification.

---

[1] **Section § 27.01 of the Texas Business and Commerce Code**, a party commits fraudulent inducement if they intentionally make false representations or omissions with the intent to deceive another party into entering into a contract or transaction. To establish a claim for fraudulent inducement, the plaintiff must show that the defendant made a false statement with the intent to deceive, the plaintiff reasonably relied on the false statement, and that such reliance caused the plaintiff to suffer damages.

69. Plaintiff, relying on Defendant's false representations and omissions, agreed to the loan modification, believing that her monthly payments would be reduced and that she would receive financial relief. Plaintiff reasonably relied on these misrepresentations and entered into the loan modification contract.

70. As a result of Defendant's fraudulent inducement, Plaintiff has suffered damages, including but not limited to:

- Financial harm due to the unexpected increase in monthly mortgage payments.

- Emotional distress caused by the stress of dealing with the deceptive loan modification process.

- Loss of time and resources spent attempting to resolve discrepancies and address the misleading information provided by Defendant.

71. Defendant's conduct was fraudulent, intentional, and done with knowledge of the falsity of the statements made to Plaintiff.

72. Plaintiff seeks:

(1) Plaintiff is entitled to recover actual damages for the harm caused by Defendant's fraudulent inducement, including any consequential damages resulting from reliance on the fraudulent statements and actions of Defendant.

(2) In addition to actual damages, Plaintiff seeks punitive damages due to the intentional and egregious nature of Defendant's fraudulent conduct.

## VI. CONCLUSION

Plaintiff, Rachel Tennyson, respectfully submits that Defendant, LoanCare, LLC, has acted in violation of multiple legal duties owed to Plaintiff, including breach of contract, fraudulent inducement, violations of the Fair Debt Collection Practices Act (FDCPA), negligence, and other wrongful conduct. As a result of Defendant's actions, Plaintiff has suffered significant financial hardship, emotional distress, and other consequential damages. Defendant's fraudulent misrepresentations, misleading statements, and failures to adhere to the agreed-upon terms have caused lasting harm to Plaintiff, including an unjustified increase in mortgage payments, wrongful reporting of loan balances, and violations of state and federal consumer protection laws. Defendant's conduct was not only negligent but also intentionally misleading, designed to induce Plaintiff into agreeing to a loan modification that failed to fulfill the promises made.

Plaintiff, having been forced to bring this suit to remedy Defendant's wrongful actions, seeks justice in the form of compensatory, punitive, and consequential damages, along with other appropriate legal and equitable relief. In light of the foregoing, Plaintiff respectfully requests that the Court grant the relief set forth in the Prayer for Relief section below and any additional relief this Court deems just and proper.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Rachel Tennyson, respectfully requests that this Court grant the following relief:

### Declaratory Relief

1. A declaratory judgment that LoanCare, LLC's actions and omissions have rendered the loan modification agreement and any related contractual agreements null and void, due to fraudulent inducement, misrepresentation, and breach of contract.

### Compensatory Damages

2. Compensatory damages in the amount of $25,000.00, representing the financial harm  suffered by Plaintiff due to Defendant's breach of contract, fraudulent inducement, and misrepresentations, including the increased monthly payments, misrepresentation of the loan balance, and consequential financial hardships.

### Consequential Damages

3. An award of $10,000.00 for consequential damages, representing Plaintiff's losses stemming from Defendant's wrongful actions, such as damage to Plaintiff's credit score, emotional distress, and additional penalties incurred due to Defendant's failures to accurately apply payments.

### Punitive Damages

4. An award of punitive damages in an amount not less than $50,000.00, to punish Defendant for their intentional, fraudulent conduct and to deter future violations. The amount of punitive damages is based on Defendant's egregious actions, including fraud, negligence, and deceptive practices.

### Attorney's Fees and Costs

5. As a pro se litigant, Plaintiff does not seek attorney's fees but requests the Court to award any and all litigation costs incurred, including filing fees, service of process fees, and any other costs reasonably necessary to bring this lawsuit.

### Pre- and Post-Judgment Interest

6. An award of pre-judgment interest on the amount of damages from the date of the breach or fraudulent inducement until the date of judgment, at the legal rate. Additionally, Plaintiff requests post-judgment interest on any damages awarded, as permitted by law.

### Injunctive Relief

7. An order nullifying the existing loan modification agreement and any related documents between Plaintiff and Defendant, declaring those agreements void and unenforceable.

### Cancellation of Liens

8. An order requiring Defendant to remove any liens filed against Plaintiff's property as a result of the voided loan agreement, and to return any funds wrongfully collected under the terms of the invalid contract.

### Other Relief

9. Any other relief that the Court deems just and proper, including but not limited to further declaratory relief, specific performance, or additional damages to fully compensate Plaintiff for all losses suffered due to Defendant's conduct.

Respectfully submitted,

Rachel Tennyson
806 Martin Luther King Jr. Blvd
Waxahachie, TX  75165
(469) 778-8322
Ravenblack036@gmail.com

## VERIFICATION

### STATE OF TEXAS,  COUNTY OF ELLIS

I have read the foregoing Verified Complaint and know its contents. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and, as to those matters, I believe them to be true.  I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct.

_____          3-19-2025
            Rachel Tennyson                                Date

### NOTARY CLAUSE

State of Texas  )
                          ) ss
County of Ellis  ) *Dallas*.

On this **19** day of **March**, 2025, before me, appeared the above

named **Rachel Nisa Tennyson** known to me, or satisfactorily proven

to me by the production of a TX Driver's License, to be the person(s) whose name is

subscribed to the foregoing instrument and he/she/they acknowledged to me that

he/she/they signed the same freely and voluntarily.

_____
                                                              Notary Public
                                                              State of Texas
                                    My Commission Expires **June 30/2027**

SERGIO ORTIZ
Notary ID #130273158
My Commission Expires
June 30, 2027
NOTARY PUBLIC
STATE OF TEXAS

# EXHIBIT A
(Note and Deed of Trust)

NMLS# 7233; Originator: Tracey Radigan, NMLS# 324314
Loan Number: **13503928**

MIN: **100287715004908062**

| Multistate | **NOTE** | FHA Case Number: 511-2861583-703 |

**April 29, 2021**
(Date)

**Waxahachie, TEXAS**
(City, State)

**806 Dr Martin Luther King Jr Blvd**
**Waxahachie, TX 75165-3925**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$211,105.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Gateway Mortgage Group, a division of Gateway First Bank**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.625%**. The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **June 1, 2021**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on **May 1, 2051**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**Gateway Mortgage Group, a division of Gateway First Bank**
**244 South Gateway Place**
**Jenks, OK 74037**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$962.75**.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**MULTISTATE FHA Fixed Rate Note**

1/2015-b

IDS, Inc - 58569

Page 1 of 3

Borrower(s) Initials

NMLS# 7233; Originator: Tracey Radigan, NMLS# 324314
Loan Number: **13503928**

MIN: **100287715004908062**

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

---

**MULTISTATE FHA Fixed Rate Note**

1/2015-b

IDS, Inc - 59569

Page 2 of 3

Borrower(s) Initials



NMLS# 7233; Originator: Tracey Radigan, NMLS# 324314
Loan Number: **13503928**

MIN: **100287715004908062**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**
WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)
**Rachel N Tennyson**                    -Borrower

_____ (Seal)
                                         -Borrower

*(Sign Original Only)*

Loan originator (Organization): **Gateway Mortgage Group, a division of Gateway First Bank**; NMLS #: **7233**
Loan originator (Individual): **Tracey Radigan**; NMLS #: **324314**

---

**MULTISTATE FHA Fixed Rate Note**                                         1/2015-b

IDS, Inc. - 59569                          Page 3 of 3

## Promissory Note

**Date:** 04/29/2021

**Borrower(s):** RACHEL N TENNYSON

**Borrower Mailing Address:** 806 DR MARTIN LUTHER KING JR BLVD  WAXAHACHIE, TX 75165-4831

**Lender:** Texas State Affordable Housing Corporation

**Place for Payment:** 6701 Shirley Ave., Austin, Texas 78752, or such other place as required by the Lender.

**Principal Amount:** 10,555.00

**Interest Rate:** 0% per annum

**Maturity Date:** 04/29/2024          (Third Anniversary of the Closing Date)

**Promise to Pay:** The Borrower promises to pay to the order of Lender the Principal Amount and all other amounts payable under this Promissory Note ("Note") when due. This Note is payable at the Place for Payment and according to the Terms of Payment and other terms of this Note. All amounts becoming due on this Note shall be payable without setoff or deduction for any reason.

The Borrower understands that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and is entitled to receive payments under this Note will be the holder, and will have all rights of Lender under this Note. The Borrower also understands that the Lender may sell or transfer the servicing of this Note.

**Terms of Payment:** The outstanding Principal Amount of this Note is due and payable on the Maturity Date. The outstanding Principal Amount of this Note may be repaid by the Borrower at any time in whole or in part without penalty or premium.

In addition, the outstanding Principal Amount of this Note is due and payable if any of the following events (each a "Repayment Event") occurs prior to the Maturity Date:

(a)   Sale or other Transfer of Property. If all or any part of the Property (defined below), or any interest in the Property (including a beneficial interest), is sold, conveyed or transferred, whether voluntary, involuntary or by operation of law, unless such conveyance results from the death of the Borrower.

(b)   Refinancing of Senior Loan. If all or any part of the Senior Loan (defined below), is refinanced.

(c)   Payoff of the Senior Loan. If the Senior Loan is paid in full.

372925.2

(d)     Failure to Occupy Property as Principal Residence. If the Borrower fails to occupy the Property as the Borrower's principal residence for a period of more than sixty (60) days.

(e)     Events of Default under this Note or the Deed of Trust. If an event of default described under this Note or the Deed of Trust (defined below) occurs.

The Lender may require payment of the Principal Amount upon a Repayment Event by notice to the Borrower any time after the Repayment Event. The notice shall provide a period of not less than 30 days from the date the notice is given within which the Borrower must pay the Principal Amount in full. If the Borrower fails to pay these sums by the end of this period, the Lender may take action to enforce this Note without further notice or demand. This action may include seeking to enforce the Deed of Trust.

If the Lender agrees, in its sole discretion, to permit any of the Repayment Events without requiring full payment of payment of the outstanding Principal Amount, that agreement shall not waive the Lender's right to require full payment of payment of the outstanding Principal Amount for any future Repayment Event.

**Security for Payment of Note:**   This Note is secured by a deed of trust ("Deed of Trust") of even date from RACHEL N TENNYSON                         to David Long, trustee, which covers the real property and all of the buildings and imporvements thereon ("Property"):

Legal Description of Property:

**See attached Exhibit "A"**

The lien of the Deed of Trust is subordinate in all respects to the liens in favor of one or more senior lien holders with respect to one or more senior loans (collectively, "Senior Loan").

**Loan Forgiveness:**  If on the third anniversary of the date of this Note, there has not been a Repayment Event or a default under this Note or the Deed of Trust, then the Lender will forgive the entire outstanding Principal Amount of this Note, and Borrower will not be responsible for any further payment hereunder. If, however, on or before the third anniversary of the date of this Note, there has been a Repayment Event or a default under this Note or the Deed of Trust, then the Lender will not forgive any of the outstanding Principal Amount of this Note, and the Lender may exercise its rights under this Note and the Deed of Trust.

**Other Terms:**  The following additional terms apply with respect to this Note:

If there is more than one Borrower, references to the Borrower in this Note shall mean each Borrower individually and the Borrowers collectively. Each Borrower is responsible for all obligations represented by this Note. Any person who is a guarantor, surety or endorser of this

372925.2

Note also is responsible for all such obligations. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, also is responsible for all such obligations. The Lender may enforce its rights under this Note against each person individually or against all such persons together. This means that any one of the persons signing this Note or assuming the obligations under this Note may be required to pay all of the amounts owed under this Note.

If the Borrower defaults in the payment of this Note or in the performance of any obligation under the Deed of Trust or in any other instrument securing or collateral to this Note, the Lender may declare the unpaid Principal Amount and any other amounts owed on this Note immediately due. The Borrower and each surety, endorser, and guarantor waive, to the extent permitted by law: (1) demand for payment, (2) presentation for payment, (3) notice of intention to accelerate maturity, (4) notice of acceleration of maturity, (5) protest, (6) notice of protest, (7) dishonor, and (8) rights under sections 51.003 and 51.004 of the Texas Property Code.

The Borrower promises, and is obligated, to pay reasonable attorneys' fees and court and other costs and fees incurred if this Note is placed in the hands of an attorney who is not an employee of the Lender to collect or enforce the Note. The Borrower will pay the Lender such expenses on demand at the Place for Payment. These expenses will become part of the debt evidenced by this Note and will be secured by the Deed of Trust.

Unless applicable law requires a different method, any notice to the Borrower may be given by delivering it or by mailing it by first class mail at the Borrower Mailing Address above or at a different address if the Borrower gives the Lender written notice of a different address, provided that notice from the Lender may be given in any other manner permitted by applicable law. If there is more than one Borrower, then the Lender may send a single notice addressed to all Borrowers unless the Lender has received notice of a different address for one or more of the Borrowers. Any notice that must be given to the Lender under this Note will be given by delivering it or by mailing it by first class mail to the Lender at the Place for Payment, or at a different address if the Lender sends the Borrower notice of that different address.

This Note shall be governed by the law of the State of Texas, without regard to the conflict of law rules of such State.

When the context requires, singular nouns and pronouns include the plural.

_____

RACHEL N TENNYSON

_____

After Recording Return To:
**Gateway Mortgage Group, a division of Gateway First Bank**
**244 South Gateway Place**
**Jenks, OKLAHOMA 74037**

This instrument was prepared by:
**Gateway Mortgage Group, a division of Gateway First Bank**
**244 South Gateway Place**
**Jenks, OK 74037**

NMLS# 7233; Originator: Tracey Radigan, NMLS# 324314
Loan Number: **13503928**

_____ (Space Above This Line For Recording Data) _____

1669-03-21

# DEED OF TRUST

| FHA Case Number: |
| --- |
| **511-2861583-703** |

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

MIN: **100287715004908062**
SIS Telephone #: **(888) 679-MERS**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **April 29, 2021**, together with all Riders to this document.

**(B) "Borrower"** is **Rachel N Tennyson a single person**. Borrower is the grantor under this Security Instrument.

**(C) "Lender"** is Gateway Mortgage Group, a division of Gateway First Bank, organized and existing under the laws of **Oklahoma**. Lender's address is **244 South Gateway Place, Jenks, OK  74037**. Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D) "Trustee"** is **Scott Gesell**.
Trustee's address is **244 South Gateway Place, Jenks, OK 74037**.

---

**FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)**

IDS, Inc. - 59485

Page 1 of 13

Borrower(s) Initials



**(E) "MERS"** is **Mortgage Electronic Registration Systems, Inc.** MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026**, tel. **(888) 679-MERS**.

**(F) "Note"** means the promissory note signed by Borrower and dated **April 29, 2021**. The Note states that Borrower owes Lender **TWO HUNDRED ELEVEN THOUSAND ONE HUNDRED FIVE AND NO/100** Dollars (U.S. **$211,105.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2051**.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Planned Unit Development Rider
☐ Other(s) (specify):

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

---



For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **Ellis**:

**Lot 12, FAIRVIEW ADDITION, City of Waxahachie, Ellis County, Texas, according to the map or plat thereof recorded in Volume 193, Page 379, Map and Plat Records of Ellis County, Texas**

Parcel ID Number: **173259**

which currently has the address of         **806 Dr Martin Luther King Jr Blvd**
                                                         **Waxahachie, TEXAS 75165-3925**                                          ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

---

**FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)**

IDS, Inc. - 59485

Page 3 of 13

Borrower(s) Initials



Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

---

FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)

IDS, Inc. - 59485

Page 4 of 13

Borrower(s) Initials _____



Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned

---

**FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)**

IDS, Inc. - 59485

Page 5 of 13

Borrower(s) Initials



premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

---

FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)

IDS, Inc. - 59485

Page 6 of 13

Borrower(s) Initials _____



If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)

IDS, Inc. - 59485

Page 7 of 13

Borrower(s) Initials



**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, and property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

---

FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)

IDS, Inc. - 59485

Page 8 of 13

Borrower(s) Initials



**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that

---

FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)

Page 9 of 13

IDS, Inc. - 59485

Borrower(s) Initials

||||| |||||||||||||||||||||||||||||||||||||| |||

the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to,**

---

**FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)**

IDS, Inc. - 59485

Page 10 of 13

Borrower(s) Initials

reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☒ **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

---

**FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)**

Page 11 of 13

IDS, Inc. - 59485

Borrower(s) Initials



**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ -Witness          _____ -Witness

_____ (Seal)             _____ (Seal)
Rachel N Tennyson                -Borrower                                            -Borrower

FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)

IDS, Inc. - 59485

STATE OF    **TEXAS**_____ ,    _Dallas_____    County ss:

The foregoing instrument was acknowledged before me this    _29th_ day of _April_, _2021_
by **Rachel N Tennyson**.

Witness my hand and official seal.

My Commission Expires:    _7-14-2024_____

_Ena Thomas_
_____
Notary Public

ENA THOMAS
Notary ID #130739646
My Commission Expires
July 14, 2024

(Seal)

Loan originator (Organization): **Gateway Mortgage Group, a division of Gateway First Bank**; NMLS #: **7233**
Loan originator (Individual): **Tracey Radigan**; NMLS #: **324314**

---

**FHA Texas Deed of Trust with MERS 1/2015 (rev. 10/17)**

IDS, Inc. - 59485

Page 13 of 13

Borrower(s) Initials _____

# EXHIBIT B
(Servicing Transfer Letter)

 

MORTGAGE



PO Box 101584
Nashville TN 37224
**DO NOT SEND PAYMENTS OR
CORRESPONDENCE TO THIS ADDRESS**

RACHEL N TENNYSON                                          05/15/2021
806 DR MARTIN LUTHER KING JR BLVD
WAXAHACHIE, TX 75165-3925

### NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS
#### FOR LOAN NUMBER(S): 13503928

RE: RACHEL N TENNYSON

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from Gateway Mortgage, a division of Gateway First Bank (Gateway Mortgage), to LAKEVIEW/LOAN CARE LLC, effective 07/01/2021.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of the transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your present servicer is Gateway Mortgage, if you have any questions relating to the transfer of servicing from your present servicer, call the Customer Service Department at 1-877-764-9319. This is a toll-free number.

| | |
|---|---|
| Your new servicer will be: | LAKEVIEW/LOAN CARE LLC |
| The payment address for | 3637 SENTARA WAY |
| your new servicer is: | VIRGINIA BEACH, VA 23452 |
| | |
| New servicer loan number: | 0051201621 |

The toll-free number of your new servicer is 800-274-6600. If you have any questions relating to the transfer of servicing to your new servicer, call their Customer Service Department at 800-274-6600 between 08:00AM and 10:00PM (ET).

The date that your present servicer will stop accepting payments from you is 06/30/2021. The date that your new servicer will start accepting payments from you is 07/01/2021. Send all payments due on or after that date to your new servicer.

If your payments are being automatically drafted from your checking or savings account, this service will discontinue with LAKEVIEW/LOAN CARE LLC and they can be contacted directly concerning reinstatement.

At year-end, you will receive two statements of account; one reflecting all payments made to Gateway Mortgage, through the transfer date and one from your new servicer, covering payments made to them after the transfer date. You will need to combine the appropriate information shown on both statements when filing your tax return.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

---

**855.331.2474 | 244 South Gateway Place, Jenks OK  74037 • www.GatewayLoan.com**
Monday – Friday: 7:30am – 5:30pm CT • Gateway Mortgage
Gateway Mortgage, a division of Gateway First Bank. Member FDIC. Equal Housing Lender. NMLS 7233. Maryland Mortgage Lender License 19466

GBYELTR                                                                                      010160000000026

# EXHIBIT C
(Loan Modification and Partial Claim Deed of Trust)

I hereby certify this a true and correct copy of the original document sent for recording.

Signature

Certified by _Tiffany Tamar Barrett_

Date _03/02/2023_

**After Recording, Mail To:**
**CoreLogic SolEx**
**1625 NW 136th Ave, Ste E100**
**Sunrise, FL 33323**

**This Document Prepared By:**
**Antonia Coats**
**CoreLogic SolEx**
**1625 NW 136th Ave, Ste E100**
**Sunrise, FL 33323**

**Parcel ID Number: 173259**

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: **May 10, 2021**    Loan No: **0058279019**
Original Loan Amount: **$211,105.00**    MIN Number: **100287715004908062**
    FHA Case No.: **511-2861583-703**

# LOAN MODIFICATION AGREEMENT

## NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

This Loan Modification Agreement ("Agreement"), made this 16th day of February, 2023, between **RACHEL N TENNYSON** whose address is **806 DR MARTIN LUTHER KING JR BLVD, WAXAHACHIE, TX 75165** ("Borrower") and **Lakeview Loan Servicing, LLC, by LoanCare, LLC as agent under Limited POA** which is organized and existing under the laws of **The United States of America, 3637 Sentara Way, Virginia Beach, VA 23452** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **April 29, 2021** and recorded in **Instrument No: 2120544** and recorded on **May 10, 2021**, of the Official Records of **ELLIS County, TX** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**806 DR MARTIN LUTHER KING JR BLVD, WAXAHACHIE, TX 75165,**
(Property Address)



*  0  0  5  8  2  7  9  0  1  9  *



*  1  0  1  8  3  4  4  7  0  1  *
HUD MODIFICATION AGREEMENT
8300h 01/14

*  8  9  5  8  2  9  +  2  5  *

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **March 1, 2023**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$164,898.64**, consisting of the amount(s) loaned to Borrower by Lender plus capitalized interest in the amount of **$3,083.89** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **6.625%**, from **March 1, 2023**. Borrower promises to make monthly payments of principal and interest of U.S. **$980.13**, beginning on the **1st** day of **April, 2023**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **March 1, 2063** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and





HUD MODIFICATION AGREEMENT
8300h 01/14

(b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.    If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6.    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.    Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8.    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.





HUD MODIFICATION AGREEMENT
8300h 01/14

_____  Date: 2/23/23

**RACHEL N TENNYSON** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

The State of Texas

County of __Ellis__

Before me __Shirkella Green__ Notary Public, on this day personally appeared
         (please print name)
**RACHEL N TENNYSON**, known to me (or proved to me on the oath of _____ or through
**TX Driver's License** (description of identity card or other document)) to be the person whose name is
subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the
purposes and consideration therein expressed.

Given under my hand and seal of office this __23__ day of __Febuary__ , A.D., __2023__

Signature of Officer

__Notary Public__
Title of Officer

My Commission expires : __08-22-2026__




\* 0 0 5 8 2 7 9 0 1 9 \*


\* 8 9 5 8 2 9 + 2 5 \*


\* 1 0 1 8 3 4 4 7 0 1 \*
HUD MODIFICATION AGREEMENT
8300h 01/14

LoanCare LLC, as Agent under Limited POA for Lakeview Loan Servicing, LLC

By: _Yolanda Kendle_____ (Seal) - Lender

Name: _Yolanda Kendle_____

Title: **Assistant Secretary**

_**MAR 0 2 2023**____

Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

State of Florida

County of Broward

The foregoing instrument was acknowledged before me by means of [✓] physical presence or [ ] online notarization,

Yolanda Kendle

this _2_ day of _March_, 20_23_ by _____, Assistant Secretary of LoanCare LLC, as Agent under Limited POA for Lakeview Loan Servicing, LLC.

_____
(Signature of Notary Public - State of Florida)

Marnie A. Wagner

MARNIE A. WAGNER
MY COMMISSION # HH 096214
EXPIRES: April 2, 2025
Bonded Thru Notary Public Underwriters

_____
(Print, Type or Stamp Commissioned Name of Notary Public)

Personally Known _✓_ OR Produced Identification _____

Type of Identification Produced _____

*0058279019*

*1018344701*

*895829+25*



MAR 0 2 2023

Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Name: _____ **Maria M. Santos**

Title: **Assistant Secretary**

_____ [Space Below This Line For Acknowledgments] _____

State of FLORIDA
County of BROWARD

The foregoing instrument was acknowledged before me by means of [✓] physical presence or [ ] online notarization,

this **2** day of **March**, 20**23**, by _____ **Maria M. Santos** _____, Assistant Secretary of Mortgage Electronic
Registration Systems, Inc.

_____
(Signature of Notary Public - State of Florida)

**Marnie A. Wagner**
_____
(Print, Type or Stamp Commissioned Name of Notary Public)

MARNIE A. WAGNER
MY COMMISSION # HH 098214
EXPIRES: April 2, 2025
Bonded Thru Notary Public Underwriters

Personally Known __✓__ OR Produced Identification _____

Type of Identification Produced _____


\* 0 0 5 8 2 7 9 0 1 9 \*

\* 8 9 5 8 2 9 + 2 5 \*

\* 1 0 1 8 3 4 4 7 0 1 \*

# Exhibit "A"

Loan Number: 0058279019

Property Address: **806 DR MARTIN LUTHER KING JR BLVD, WAXAHACHIE, TX 75165**

Legal Description:

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF ELLIS, STATE OF TEXAS: LOT 12, FAIRVIEW ADDITION, CITY OF WAXAHACHIE, ELLIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 193, PAGE 379, MAP AND PLAT RECORDS OF ELLIS COUNTY, TEXAS.



12338 06/18 Exhibit A Legal Description Attachment



Page 1 of 1

After Recording Mail To:
**CoreLogic SolEx**
**1625 NW 136th Ave, Ste E100**
**Sunrise, FL 33323**

This Document Prepared By:
**Antonia Coats**
**CoreLogic SolEx**
**1625 NW 136th Ave, Ste E100**
**Sunrise, FL 33323**

Parcel ID Number: **173259**

_____ [Space Above This Line For Recording Data] _____

Loan No: **0058279019**
MIN Number: **100287715004908062**
FHA Case No.: **511-2861583-703**

## PARTIAL CLAIM DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.**

THIS PARTIAL CLAIM DEED OF TRUST ("Security Instrument") is made this **16th** day of **February, 2023**. The grantor is **RACHEL N TENNYSON** ("Borrower"), whose address is **806 DR MARTIN LUTHER KING JR BLVD, WAXAHACHIE, TX 75165**. The trustee is **SCOTT GESELL**, ("Trustee"), whose address is **244 SOUTH GATEWAY PLACE, JENKS, OK 74037**.

The beneficiary is **the Secretary of Housing and Urban Development**, whose address is **451 Seventh Street SW, Washington, DC 20410** ("Lender"). Borrower owes Lender the principal sum of **FORTY FIVE THOUSAND ONE HUNDRED SIXTY AND 86/100** Dollars (U.S. **$ 45,160.86**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **March 1, 2063**.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **ELLIS**, State of **TEXAS**:






INST NO. 2305329  FILING DATE/TIME: February 28, 2023.

FILED FOR RECORD - ELLIS COUNTY, TEXAS

See Exhibit "A" attached hereto and made a part hereof;

which has the address of **806 DR MARTIN LUTHER KING JR BLVD, WAXAHACHIE, TX 75165** "Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing, is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

2.    **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3.    **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

4.    **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to



Texas Partial Claim Deed of Trust

Lender. Any notice to Lender shall be given by first class mail to: **Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410** or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5.      **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.   To this end the provisions of this Security Instrument and the Note are declared to be severable.

6.      **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7.      **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the power of sale is invoked, Trustee shall record a notice of default in each county in which any part of the Property is located and shall mail copies of such notice in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Upon receipt of payment of the price bid, Trustee shall deliver to the purchaser Trustee's deed conveying the Property. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of exercising the power of sale, and the sale, including the payment of the Trustee's fees actually incurred and reasonable attorneys' fees as**




permitted by Applicable Law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Promissory Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.

8.     **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

9.     **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

10.     **Request for Notices.** Borrower requests that copies of the notice of default and sale be sent to Borrower's address which is the Property Address.

11.     **Bankruptcy Discharge.** If Borrower, subsequent to **February 16, 2023**, receives a discharge in a Chapter 7 bankruptcy, and there is no valid reaffirmation agreement of the underlying debt, Lender will not attempt to re-establish any personal liability for the underlying debt.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.



RACHEL N TENNYSON  -Borrower

Date: 2/23/23



_____ [Space Below This Line For Acknowledgments] _____

The State of Texas

County of _Ellis_____

Before me ____Shirkella Green_____ Notary Public, on this day personally appeared
           (please print name)
**RACHEL N TENNYSON**, known to me (or proved to me on the oath of _____ or through
_TX Driver's License_ (description of identity card or other document)) to be the person whose name is
subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the
purposes and consideration therein expressed.

Given under my hand and seal of office this ___23___ day of ___Febuary_____, A.D., _2023_

                          Signature of Officer

                          Notary Public
                          Title of Officer

My Commission expires : _08·22·2026_





Texas Partial Claim Deed of Trust
8366 10/12





## Exhibit "A"

Loan Number: **0058279019**

Property Address: **806 DR MARTIN LUTHER KING JR BLVD, WAXAHACHIE, TX 75165**

Legal Description:
THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF ELLIS, STATE OF TEXAS: LOT 12, FAIRVIEW ADDITION, CITY OF WAXAHACHIE, ELLIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 193, PAGE 379, MAP AND PLAT RECORDS OF ELLIS COUNTY, TEXAS.

FILED FOR RECORD - ELLIS COI
INST NO. 2305329 on February 28. :

# EXHIBIT D
(Lien Release)

# RELEASE OF LIEN

Loan Number 0058279019P
PLS ID 109
Investor ID 6EV

When Recorded Return To:
LoanCare, LLC
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

THE STATE OF TEXAS
COUNTY OF ELLIS

KNOW ALL MEN BY THESE PRESENTS, that the undersigned acknowledges the payment in full, according to the face and tenor thereof, of a certain promissory note in the original principal sum of $10,555.00, and secured by a Deed of Trust executed by **RACHEL N TENNYSON** with **TEXAS STATE AFFORDABLE HOUSING CORPORATION**, as the Beneficiary, described in a certain Deed of Trust dated 04/29/2021 and recorded in **Instrument # 2120545**, of the records of Real Property of **ELLIS** County, **Texas**;

Property Address: 806 DR MARTIN LUTHER KING JR BLVD, WAXAHACHIE, TX 75165.

Now therefore, **TEXAS STATE AFFORDABLE HOUSING CORPORATION**, as the Beneficiary of said Deed of Trust, does hereby release the Deed of Trust lien shown by said Instrument to exist upon the previously described property, to secure payment of said Note.

IN WITNESS WHEREOF, the said corporation has caused these to be signed by its duly authorized officer.
Dated on ___5__/__15__/2024 (MM/DD/YYYY)
TEXAS STATE AFFORDABLE HOUSING CORPORATION, by LOANCARE, LLC, its Attorney-in-Fact

By:

Tracy Rogers
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

LC002 441064539 RELDPA    DOCR T132405-11:52:32 [C-1] RCNTX1

*D0105958104*

# EXHIBIT E
(Online Screenshot Dated 3/1/2024)

03/01/2063

worry about being late again.

**$1,534.74**

Monthly Payment Amount

Current Principal Balance

**$164,016.17**

Interest Rate

6.625%

Payment Due Date

**03/01/2024**

Total Amount Due

**$19,425.76**

More Info

Get Started

Pay Now

ℹ Online payments are not available for this account, please contact customer service.

Statements      Go Paperless      Manage Auto Pay      Request Pay-Off      More ›

Hello there! I'm your Support Bot. I'm here to assist!

**Use the calculators and make well-informed decisions**

Q Search

5:36 PM
3/16/2025

# EXHIBIT F
(April 2024 Statement)

**Lakeview**
Subserviced by LoanCare

P.O Box 8068 | Virginia Beach, VA 23450 | 1.800.509.0183

9-754-05057-0070141-001-000-000-000-000

RACHEL N TENNYSON
806 DR MLK JR BLVD # B
WAXAHACHIE TX 75165-3925

## MONTHLY STATEMENT

| | |
|---|---|
| **Statement Date** | 04/16/2024 |
| **Total Amount Due** | $4,552.85 |
| **Payment Due Date\*** | 05/01/2024 |

\* A late fee of $39.21 may be assessed if payment is received after normal business hours on 05/16/2024



Save time and pay online at
https://lakeviewloanservicing.myloancare.com

**Customer Service/Pay-by-Phone:** 1.800.509.0183\*
\*Calls are randomly monitored and recorded to ensure quality service.
**Hours:** Monday - Friday: 8 A.M. to 9 P.M. ET
           Saturday: 8 A.M. to 3 P.M. ET
**Refinance/Purchase Loan Specialist:**
1.833.881.8270
**Hours:** Monday - Friday: 8:30 a.m. to 8 p.m. ET

### Account Information

| | |
|---|---|
| **Loan Number** | 0058279019 |
| **Property Address:** | |
| 806 DR MARTIN LUTHER KIN | |
| WAXAHACHIE TX 75165 | |
| **Outstanding Principal Balance** | $164,016.17 |
| **Deferred Balance** | $10,555.00 |
| **Interest Rate** | 6.625% |
| **Escrow Balance** | ($19.55) |
| **Maturity Date** | 03/01/2063 |
| **Prepayment Penalty** | No |

### Explanation of Amount Due

| | |
|---|---|
| **Principal** | $75.45 |
| Interest | $904.68 |
| Escrow (Taxes and Insurance) | $503.24 |
| **Regular Monthly Payment** | $1,483.37 |
| **New Fees & Charges (since last statement)** | $0.00 |
| **Past Due Amount (including unpaid fees/charges)** | $3,069.48 |
| **Unapplied Balance†** | $0.00 |
| **Total Amount Due\*\*** | $4,552.85 |

### Delinquency Notice

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure, with the possibility of losing your home. As of April 16, you are 46 days delinquent on your mortgage loan.
Recent Account History

- Payment due 11/01/2023: Paid on 12/04/2023
- Payment due 12/01/2023: Paid on 12/19/2023
- Payment due 01/01/2024: Paid on 01/11/2024
- Payment due 02/01/2024: Paid on 03/01/2024
- Payment due 03/01/2024: Unpaid amount of $1,534.74
- Payment due 04/01/2024: Unpaid amount of $1,534.74

**Total due $4,552.85**
\*\* You must pay this amount to bring your loan current. If you are experiencing financial difficulty: See "Important Information" for homeowner counseling information.

### Past Payment Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| **Principal** | $0.00 | $171.49 |
| **Interest** | $0.00 | $1,812.37 |
| **Escrow (Taxes and Insurance)** | $0.00 | $1,109.22 |
| **Fees & Charges** | $0.00 | $0.00 |
| **Unapplied Amount** | $0.00 | $0.00 |
| **Total** | **$0.00** | **$3,093.08** |

### Important Messages

Learn more about the Homeowner Assistance Fund (HAF), a federal program helping homeowners impacted by COVID-19. Find out more information about the availability of HAF by visiting the National Council of State Housing Agencies website at https://www.ncsha.org/homeowner-assistance-fund/.

Notice Regarding Loss Mitigation:  Program participation was agreed to.

\*\*This amount does not represent a full payoff or reinstatement figure.  Please contact customer service for information on full reinstatement or to request a complete payoff.

†Partial Payment: If your loan has a past due balance, any partial payments that you make are not applied to your mortgage, but instead are held in a suspense account, and reflected in the Suspense/Other column of the Transaction Activity. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

**New eStatement Options!** To switch to online **1098** and **escrow analysis** statements, sign in to our website and visit the Document Center.

### Transaction Activity (03/19/2024 to 04/16/2024)

| Date | Description | Total | Principal | Interest | Escrow | Suspense/Other | Charges |
|---|---|---|---|---|---|---|---|
| 04/05/2024 | MIP/PMI Disbursement | $139.99 | | | | | |

*Additional loan activity can be found at https://lakeviewloanservicing.myloancare.com under the Transaction History tab.*

---

*Please return this portion with your payment.*
### Loan Number: 0058279019

| PAYMENT DUE DATE | CURRENT PAYMENT | PAST DUE AMOUNT |
|---|---|---|
| 05/01/2024 | $1,483.37 | $3,069.48 |
| TOTAL FEES AND CHARGES | UNAPPLIED BALANCE | TOTAL AMOUNT DUE |
| $0.00 | $0.00 | $4,552.85 |

\*A late fee of $39.21 may be assessed if payment is received after normal business hours on 05/16/2024

See reverse side for additional important information.

RACHEL N TENNYSON
806 DR MLK JR BLVD # B
WAXAHACHIE TX 75165-3925

| | |
|---|---|
| **Additional Principal** | $ _____ |
| **Additional Escrow** | $ _____ |
| **Late Charge** | $ _____ |
| **Other** | $ _____ |

**Amount Enclosed:** $ _____ , _____ . _____

Please make checks payable to:

LOANCARE
PO BOX 60509
CITY OF INDUSTRY, CA  91716-0509

9071623005827901924137045528504592062

Internet Reprint

**IMPORTANT INFORMATION**

## Additional Contact and Correspondence Information

**Customer Service Inquiries**
LoanCare
Attn: Customer Service
P.O. Box 8068
Virginia Beach, VA 23450

Telephone: 1.800.509.0183
Fax: 855.629.2607
Outside the U.S.: 757.271.5100
Monday - Friday: 8 A.M. to 9 P.M. ET
Saturday: 8 A.M. to 3 P.M. ET

**Collections**
1.800.509.0183
Fax: 866.221.5275
Monday - Friday: 8 A.M. to 9 P.M. ET
Saturday: 8 A.M. to 3 P.M. ET

**Overnight Address**
LoanCare
Attn: Appropriate Department
3637 Sentara Way
Virginia Beach, VA 23452

**Notices of Error/Information Requests**
LoanCare
Attn: Office of the Customer
P.O. BOX 8068
Virginia Beach, VA 23450

**Property Tax**
LoanCare - 0031455
P.O. Box 9241
Coppell, TX 75019-9278
Fax: 817.826.1265

**Insurance Claims Correspondence**
P.O. Box 202014
Florence, SC 29502-2014
1.866.822.3434
Fax: 843.413.7128
Monday - Friday 8 A.M. – 8 P.M. ET
Saturday: 8 A.M. to 3 P.M. ET

**Insurance Center**
P.O. Box 202049
Florence, SC 29502-2049
1.866.822.0890
Fax: 843.413.7127
Monday - Friday 8 A.M. – 8 P.M. ET
Saturday: 8 A.M. to 3 P.M. ET
Email - LC623@mycoverageinfo.com
Include loan number and property address in body of email
www.mycoverageinfo.com/LC623

## Payment Information

**Automatic Payments and Online Bill Pay**
Sign-up today at https://lakeviewloanservicing.myloancare.com and choose any day up to the 16th for your payment to be withdrawn each month. With *Online Bill Pay*, you can schedule a payment on our website.

**Pay by Phone**
To make payment using our automated telephone service, call 1.800.509.0183.

**By Mail**
Please detach the payment coupon attached below and mail using the enclosed envelope.

**Western Union Quick Collect or MoneyGram ExpressPayment**
Allows you to send funds directly to our office, by wire. There is a fee associated with each service. Be sure to provide your loan number. For the nearest payment location and for further details call 1.800.325.6000 for Western Union or 1.800.926.9400 for MoneyGram. Complete the Quick Collect form using CODE CITY "LOANCARE" and CODE STATE "VA" or use "Receive Code 6353" on the ExpressPayment™ form. Transactions must be completed by 3 p.m. ET to ensure same day processing.

**Customers Who Pay by Check:** When you pay your bill by check, you authorize us to electronically process your check. If your check is processed electronically, your checking account may be debited the same day we receive the check and it will not be returned with your checking account statement. If someone other than you or a bill paying service pays your bill, you must notify them of this policy.

Electronic check conversion is simply a process where your paper check is converted to an electronic payment from your account. Your check is copied and stored and the original check is destroyed. In most cases, your payment will show as an ACH or electronic debit. For more information regarding this process, visit the Federal Reserve Internet site at http://www.FederalReserve.gov.

### Payoff Information

To obtain an accurate payoff on your loan, we must receive a request in writing indicating your loan number, name, property address and the date of the anticipated payoff. This can be ordered by sending a written request by mail to our correspondence address: Attention: Payoff Department, or faxing your request to 1.904.366.2039, or by visiting our website at https://lakeviewloanservicing.myloancare.com.

## Special Request Fees

Listed below are some of the fees charged for special services you might request. The actual fee charged to a particular customer may be different or there may be no fee. The fee schedule is subject to change. Please review each statement for any changes.

| | | | |
|---|---|---|---|
| Automated Phone System Payment: | No Fee | Insufficient/Returned Check: | up to $40.00 |
| Online Payment: | No Fee | Extraordinary Services: | As Agreed |
| Autodraft: | No Fee | Payoff Statement Fee: | up to $60.00 |

## State Disclosures

Important notice for only those with a mortgage loan on real estate located in Texas: COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1.877.276.5550. A complaint form and instructions may be downloaded and printed from the department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smiinfo@sml.texas.gov.

## Servicemembers Civil Relief Act

The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to service members. If either you have been called to active duty or active service, or you are a spouse or dependent of such a service member, you may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act.

If you have not made us aware of your status, please contact us immediately. You may also call 1.800.342.9647 (toll free from the United States) or www.MilitaryOneSource.mil/legal to find out more information.

## Important Information

**Fair Debt Collection Practices Act:** To the extent the Fair Debt Collection Practices Act (FDCPA) and/or state debt collection laws are applicable, please be advised that this communication is from a debt collector and any information obtained will be used for that purpose.

**Fair Credit Reporting Act:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Homeowner Counselor Information:** If you would like counseling or assistance, you can contact the following: U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to https://hudgov-answers.force.com/housingcounselingfs/ or call 800-569-4287.

**Important Notes to Mortgagors Involved in a Bankruptcy Proceeding:** If you are a debtor involved in a bankruptcy proceeding, this statement has been sent to you merely for informational purposes and should be disregarded as an attempt to collect the debt (unless your mortgage is subject to an in rem order). The amount stated may not accurately reflect the debt owed.

If the automatic stay is in effect, we will not act to collect on the debt owed until the stay has been lifted or the case has been closed, dismissed, or discharged. If this statement has reached you after your case has been discharged, please be assured that we are not attempting, and will not attempt, to collect this debt as a personal obligation, except in those circumstances where we may have the right to do so under applicable bankruptcy law. Otherwise we will seek recovery of the debt from the property securing this debt.

## Homeowners and Hazard Insurance Information

It is your responsibility to maintain proper and sufficient hazard insurance coverage. Hazard insurance includes fire and extended coverage, and where required, flood insurance. For your protection, you need to consult with your agent or insurance carrier to determine the replacement value of your property and available coverage. Renewable policies and invoices are due thirty days prior to the expiration of the existing policy.

Please be advised that mid-term replacement coverage with another insurance company at any time other than the renewal date may cost you money. Refund of unused premiums are generally penalized by the carrier. Replacement policies must be accompanied by a paid receipt for the first year's premium and the previous insurance carrier should refund any unused premiums on cancelled policies directly to you.

Please contact your carrier if you do not receive your homeowners (hazard and where required, flood) policy on all mortgage loans and a copy of the insurance billing (if your loan is escrowed/impounded for insurance).

Please notify your agent to either call our Insurance Center at 1.866.822.0890 to make sure that we are listed on the policy and that copies, which include your loan number and property address, are uploaded to https://lakeviewloanservicing.myloancare.com, faxed to our Insurance Center at 1.843.413.7127 or sent to the following address: Loancare, LLC ISAOA/ATIMA P.O. Box 202049, Florence, SC 29502-2049.

For questions regarding Insurance Claims Processing, please contact 1.866.822.3434 or fax information to 1.843.413.7128.

04/16/2024